## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER D. PERKINS, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-1592-HEA |
| | ) | |
| LIFE OF THE SOUTH INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Life of the South Insurance Company ("LOTS"), by and through its undersigned counsel, submits this memorandum in opposition to Third-Party Plaintiff Christopher D. Perkins's ("Plaintiff") Motion to Remand.[1] (ECF 11.) In support of removal, LOTS states:

## ARGUMENT

### I.   This Court has jurisdiction.

This Court has original jurisdiction over any class action (1) in which any member of the putative class is a citizen of a state different from any defendant ("minimal diversity"), as long as (2) there are at least 100 members in the putative class ("numerosity") and (3) the aggregate value of the claims exceeds $5,000,000 ("amount in controversy"). 28 U.S.C. § 1332(d). LOTS has shown, and Plaintiff does not contest, that this is a class action with minimal diversity. (*See* ECF 1 at 3–4; ECF 11.) And, Plaintiff's protests aside, LOTS has also shown numerosity and established that the amount in controversy exceeds $5,000,000. (*See* ECF 1 at 3–7.)

Start with numerosity. Plaintiff's putative class consists of "all people who" (1) "are an insured on a Contract of Insurance with [LOTS]"; (2) "[Mariner's] or [LOTS's] records show the

---

[1] As explained in the Notice of Removal, LOTS maintains that Plaintiff is wrongly named "Third-Party Plaintiff" and that LOTS is wrongly named "Third-Party Defendant" in the context of this removed action. (*See* ECF 1 at 7–9.)

insurance was terminated before the scheduled maturity date of the indebtedness"; and (3) "were not credited or refunded with all unearned premiums." (ECF 1-1 at 62.) Given this definition, Plaintiff argues that LOTS's showing of over 1,000,000 LOTS certificate holders with early-terminated certificates did not establish numerosity because LOTS did not expressly distinguish certificate holders who "were not credited or refunded with all unearned premiums" from others. (ECF 11 at 9 n.2.)

But no distinction was necessary because, in contrast to the early-termination prong of his class definition, Plaintiff's class is not limited to those whom *LOTS's records show* did not receive all unearned premiums. *Rather, the putative class encompasses all holders of early-terminated "Contracts of Insurance" to whom LOTS allegedly credited or refunded any amount less than "all unearned premiums" paid into their certificates at the time of termination*. (ECF 1-1 at 62.) Thus, class membership depends on what a certificate holder was actually credited or refunded despite what LOTS's records show they were credited or refunded.

If, for instance, LOTS's records showed that it fully credited or refunded all of Plaintiff's unearned premiums upon early termination of a Contract of Insurance, Plaintiff's allegations that he received less than "all" unearned premiums would be unaffected *as pleaded* because he has alleged that he did not receive them in fact, regardless of LOTS's records. And Plaintiff alleges that LOTS similarly undercredited or underrefunded an entire class of "over 40" certificate holders with "standardized Contracts of Insurance" just like Plaintiff's, regardless of whether LOTS's records show a credit or refund in any amount. (*Id.* at 62–63.)

At this stage, then, there is no principled reason derivable from Plaintiff's Complaint to limit Plaintiff's class allegations to any subset of early-terminated "Contracts of Insurance"—as pleaded, any such certificate is susceptible to his class allegations and falls within the class definition. Thus, to show numerosity, LOTS was required only to show that the putative class of "over 40 people" that Plaintiff alleges had early-terminated certificates in fact contains 100 or more people. (*Id.*); 28 U.S.C. § 1332(d). And LOTS did so by showing that "over 1,000,000 credit

insurance certificates issued through Mariner have terminated before maturity" since only 2018. (ECF 1 at 4.)

This conclusion is solidified by the fact that Plaintiff's proposed class extends far beyond credit-insurance certificates issued by LOTS through Mariner. To be sure, the proposed class is limited to people "insured on a Contract of Insurance with LOTS." (ECF 1-1 at 62.) But Plaintiff has defined "Contracts of Insurance" as "contracts of insurance, *including, without limitation*, credit life insurance, credit accident and sickness insurance, credit casualty, insurance, credit involuntary unemployment insurance or credit property insurance that were solicited, negotiated, and/or procured by [Mariner] and insured by [LOTS]." (*Id.* at 59–60 (emphasis added).) Therefore, although the class includes credit-insurance certificates issued by LOTS through Mariner, it is not limited to either credit-insurance certificates or certificates issued through Mariner—any insurance certificate between an insured and LOTS that terminated early falls within the class definition. *See Thornburg v. Open Dealer Exchange, LLC*, No. 17-6056-CV-SJ-ODS, 2018 WL 3596048, at *4 (W.D. Mo. July 26, 2018) ("The phrase 'including, without limitation' does not narrow ODE's duties to only the obligations that follow such language. Rather, 'including, without limitation' is an 'oceanic phrase' signaling any list that follows is an expansion of preceding language rather than a limitation of preceding language."). To this end, LOTS has attached as Exhibit A to this memorandum the Declaration of Craig Hart ("Hart Declaration'), which establishes that, according to LOTS's records, over 1,000,000 certificates of credit insurance have terminated early since 2018, regardless of whether they were issued through Mariner. (Hart Decl. ¶ 5.) Therefore, numerosity is established.

LOTS has also shown the amount in controversy to exceed $5,000,000. (ECF 1 at 5–7.) "If the class action complaint does not allege that more than $5 million is in controversy, 'a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 983 (8th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014)). And whether the amount in controversy exceeds the jurisdictional threshold "'is

not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.'" *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009)).

Plaintiff's Complaint does not specify the amount of damages he seeks from LOTS. (*See* ECF 1-1 at 59–65.) But he does allege that LOTS owes him and a putative class of over 1,000,000 members up to the full amount of unearned premiums attributed to their LOTS-issued, early-terminated Contracts of Insurance as of the termination date. (*Id.*) Thus, Plaintiff seeks over $5,000,000 in unearned premiums alone if the average LOTS-issued Contract of Insurance in the putative class had only $5 in unearned premiums when terminated early. And Plaintiff alleges that at least one LOTS-issued Contract of Insurance had $87.52 in unearned premiums upon early termination—over 16 times the amount required per Contract of Insurance in the class—in his Counterclaim against Mariner, which LOTS attached as an exhibit to its Notice of Removal per Local Rule 2.03 and of which this Court is entitled to take judicial notice.[2] (ECF 1-1 at 49.); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("In Missouri, as in other states, court records are public records."); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) ("[W]e may take judicial notice of judicial opinions and public records[.]").

It is thus more than plausible that, on average, the over 1,000,000 other LOTS-issued Contracts of Insurance targeted by Plaintiff's class allegations average at least 1/16 the amount Plaintiff seeks under an allegedly comparable[3] Contract of Insurance. This plausibility is only

---

[2] Although Plaintiff purports to have brought claims against LOTS as pendant to his action with Mariner, LOTS seeks remove only the separate civil action commenced by Plaintiff's Complaint. *See* Part II.A, *infra*. Mariner is not a party to this action or subject to this Court's jurisdiction.

[3] Plaintiff's Counterclaim defines "Contracts of Insurance" as "contracts of insurance, including without limitation, credit life insurance, credit accident and sickness insurance, credit casualty insurance, credit involuntary unemployment insurance or credit property insurance." (ECF 1-1 at 48.) It then separately alleges that those Contracts of Insurance were "solicited, negotiated, and/or procured by [Mariner] and insured by [LOTS] or another insurer that writes Contracts of Insurance." (*Id.*) Plaintiff's Complaint defines "Contracts of Insurance" identically, except that includes within that definition: "contracts of insurance, including without limitation. . . credit property insurance *that were solicited, negotiated, and/or procured by [Mariner] and insured by [LOTS]*." (*Id.* at 59–60 (emphasis added).

enhanced by the fact that, as explained above, Plaintiff's allegations extend far beyond the credit-insurance certificates LOTS has shown to support removal. And the Notice of Removal also points out that Plaintiff additionally seeks unspecified "actual damages, equitable and injunctive relief, and such other further relief as this Court may consider appropriate" for himself and the putative class, including "prejudgment and post-judgment interest" and declaratory relief. (ECF 11 at 6 (citation omitted).) Thus, LOTS met its amount-in-controversy burden.

Nevertheless, Plaintiff correctly notes that, "[i]f the class action plaintiffs challenge the notice of removal allegation, 'removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.'" *Pirozzi*, 938 F.3d at 983. And "[a] removing defendant may use reasonable estimates, inferences, and deductions to establish the amount in controversy, as long as the evidence shows it is more likely than not (i.e., a preponderance of the evidence) that a fact finder might legally conclude that damages will exceed the jurisdictional amount." *Atkins v. AT&T Mobility Servs.*, LLC, No. 2:18-cv-00599, 2019 WL 5190971, at *5 (S.D.W.V. Oct. 15, 2019) (citing *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). LOTS's Notice of Removal and its attached Declaration met this standard, too.  (*See* ECF 1 at 6–7.) But to remove all doubt, LOTS has attached the Hart Declaration, which shows that over $50 million in unearned premiums were credited or refunded upon early termination of the certificates at issue since 2018, each dollar of which is in controversy here. (Hart Decl. ¶ 6.) Thus, this Court has jurisdiction.

## II.    LOTS is a "defendant" that can remove under CAFA.

Unable to refute this Court's jurisdiction, Plaintiff argues that "LOTS isn't an original defendant" and, thus, that LOTS's ability to remove has been foreclosed by *Home Depot U.S.A. v. Jackson*, 139 S. Ct. 1743, 1749 (2019). (ECF 11 at 3.) But LOTS has shown that it is an original defendant. (*See* ECF 1 at 7–9.) And Plaintiff has not shown otherwise.

### A.    LOTS is an original defendant.

"Determining which party is the original defendant for removal purposes is a question of federal law." *Lazarus v. Karizad, LLC*, No. 1:12-cv-1787-RCL, 2021 WL 765708, at *7 (D.D.C.

Feb. 26, 2021) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941)); *see also Chicago Rock Island & Pac. R.R. v. Stude*, 346 U.S. 574, 579–80 (1954) ("For the purposes of removal, the federal law determines who is plaintiff and who is defendant."). "In other words, the name the parties give themselves in state-court proceedings (or, for that matter, the labels they attach to their state-court filings) do not control." *Lazarus*, 2021 WL 765708, at *7; *see also Growth Opportunity Connection, Inc. v. Philadelphia Indem. Ins. Co.*, No. 11-601-CV-W-DGK, 2011 WL 5141097, at *7 (W.D. Mo. Dec. 9, 2011) ("In determining whether removal jurisdiction is proper, this court is not bound by the labels attached by state practice."). "Thus, 'for purposes of the removal statutes the court may disregard state law labels and state law procedures[.]'" *Lazarus*, 2021 WL 765708, at *7 (quoting *Hill v. Maton*, 944 F. Supp. 695, 698 n.4 (N.D. Ill. 1996)). "This does not mean the State's practice and procedure is irrelevant," but rather that "'[t]he state court's characterization of the action is a factor this court can consider in determining whether a civil action is separate for purposes of removal.'" *Growth*, 2011 WL 5141097, at *7 (quoting *Nungesser v. Bryant*, No. 07-1285-WEB, 2007 WL 4374022, at *6 (D. Kan. Dec. 7, 2007)).

For these reasons, the Western District of Missouri held in *Growth* that a putative third-party complaint[4] filed in Missouri state court that fails to state a proper derivative claim to an ongoing action is not a third-party complaint for removal purposes. *Id.* It is, rather, "a separate action, making [the putative third-party defendant named therein] a defendant who may properly remove an action pursuant to §§ 1441 and 1446." *Id.* at *8. And, as LOTS explained in its Notice of Removal, the same is true for Plaintiff's Complaint, which is a complaint improperly labeled "Third-Party Petition." (ECF 1 at 7–9.) Thus, LOTS is a defendant that can remove. (*Id.*)

*Home Depot* only confirms this conclusion. There, the Supreme Court explained that "[t]he general removal statute, 28 U.S.C. § 1441(a), provides that 'any civil action' over which a federal court would have original jurisdiction may be removed to federal court by 'the defendant or the

---

[4] Because removal is a question of federal law, this Opposition generally uses "complaint" or "third-party complaint" to refer to analogous state-court filings except where they are explicitly considered as a matter of state law.

6

defendants.'" *Home Depot*, 139 S. Ct. at 1745. And "[t]he Class Action Fairness Act of 2005 (CAFA) provides that '[a] class action' may be removed to federal court by 'any defendant without the consent of all defendants.'" *Id.* (quoting 28 U.S.C. § 1453(b)). The Court further determined that the phrase "any defendant" in § 1453(b) has the same meaning as "the defendant or the defendants" in § 1441(a). *Id.* at 1751.

With these principles in hand, the *Home Depot* Court examined "whether the term 'defendant' in either § 1441(a) or § 1453(b) encompasses a party brought into a lawsuit to defend against a counterclaim filed by the original defendant or whether the provisions limit removal authority to the original defendant." *Id.* at 1747. "Home Depot emphasizes that it is a 'defendant' to a 'claim,'" the Court said, "but [§ 1441(a)] refers to 'civil action[s],' not claims.'" *Id.* The Court then explained that, because removal requires a federal court to have original jurisdiction over a "civil action," and "because 'the civil action . . . of which the district cour[t] must have 'original jurisdiction' is the action as defined by the plaintiff's complaint, the 'defendant' to that action is the defendant to that complaint." *Id.* Thus, because "the filing of counterclaims that included class-action allegations against a third party did not create a new 'civil action' with a new 'plaintiff' and a new 'defendant,'" *id.* at 1749, "a third-party counterclaim defendant is not a 'defendant' who can remove under § 1441(a)," *id.* at 1750, or under § 1453(b). *Id.* at 1751.

In the wake of *Home Depot*, then, courts must look to the pleading that the removing party alleges constitutes "a new 'civil action' with a new 'plaintiff' and a new 'defendant'" and to which that party alleges to be an original defendant. *Id.* at 1749. If the pleading alleges only a "claim" in an ongoing civil action instead of commencing a new one—as in a counterclaim—that removing party is not an "original defendant" and, thus, cannot remove. *Id.* at 1748. But, if that pleading is constitutes a separate civil action and the removing party is an original defendant to that action, that original defendant is a proper party to remove. *Id.*

Here, Plaintiff's Complaint created a new civil action with a new plaintiff and a new defendant. "The term 'civil action' was used in Sec. 1441 as a substitute for 'suit of a civil matter,'"—that is, "any proceeding in a court of justice, by which an individual pursues that

remedy in a court of justice which the law affords them." *Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa*, 185 F.2d 96, 98 (8th Cir. 1980) (quoting *Weston v. City Council of Charleston*, 27 U.S. 449, 454 (1829)). And "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3; *accord* Mo. R. Civ. P. 53.01. Thus, for example, counterclaims are precluded insofar as they are alleged in an answer, not in a complaint. *See* Fed. R. Civ. P. 7, 13. But Plaintiff's mislabeled Complaint was just that—a complaint—in which Plaintiff sought to "pursue[] that remedy in a court of justice which the law affords [him]." *Stoll*, 185 F.2d at 98 (quoting *Weston*, 27 U.S. at 454 (1829)). Plaintiff, moreover, is a new plaintiff because he was not a plaintiff in the action with Mariner, and LOTS is likewise a new defendant because, as explained in greater detail below, at no point was it joined to the action between Plaintiff and Mariner as a defendant. *Cf. Home Depot*, 139 S. Ct. at 1749. Therefore, as a matter of federal law, Plaintiff's Complaint commenced a new civil action subject to removal by the original defendant named therein: LOTS.

Plaintiff says that LOTS cannot remove because his Complaint was a third-party complaint, not a complaint, and that LOTS is therefore a third-party defendant, not an original defendant. First, he says that his Complaint was a third-party complaint solely because he labeled it "Third-Party Petition." (ECF 3, 5 n.1.) Indeed, according to Plaintiff, "whether his third-party petition was improper" is "irrelevant to the removal analysis." (*Id.* at 5 n.1.) But this is incorrect—as explained above, "the name the parties give themselves in state-court proceedings (or, for that matter, the labels they attach to their state-court filings) do not control." *Lazarus*, 2021 WL 765708, at *7; *see also Growth*, 2011 WL 6141097, at *4 ("[W]hether the third-party petition is improper . . . is far from irrelevant; the Court finds it highly instructive as to whether this case is separate and distinct from the [putative underlying] proceeding.").

In any event, Plaintiff also "disagrees that his third-party petition was improper." (ECF 11 at 5 n.1.) He says that "LOTS is liable to [him] for part of [Mariner's] claim against [him] because [Mariner] is suing [him] to collect amounts not reflecting the credit due from LOTS." (*Id.*) He says that "[a] common question at the heart of [Mariner's] petition, [Plaintiff's] Counterclaim, and [Plaintiff's] Third-Party Petition is the rights and obligation of all the parties under the contract of

8

insurance regarding unearned premiums." (*Id.*)

But Plaintiff's "Third-Party Petition" is not only "improper." (*Id.*) It is not a third-party complaint at all—and LOTS is therefore not a third-party defendant. In federal third-party practice, a "third-party defendant" is defined as a party served with a "third-party complaint." Fed. R. Civ. P. 14(a)(2). And a complaint is "not a third-party complaint" unless it "attempt[s] to transfer to the third-party defendant the liability asserted against [the original defendant] by the original plaintiff." *Lomas Mortg.*, *U.S.A. v. Estate of Plummer*, Civ. A No. 89-2172, 1991 WL 12351, at *3 (E.D. Pa. Jan. 31, 1991); *accord West v. United States*, 592 F.2d 487, 491 (8th Cir. 1979) ("[A]n original plaintiff's complaint against a third-party defendant . . . is not a third-party complaint."). That is, unless a complaint alleges "the [putative] third-party defendants' liability to be derivative of defendants' own liability to plaintiff," it is not a third-party complaint. *Red River Biorefinery, LLC v. NAES Corp.*, No. 3:20-cv-109, 2021 WL 6805705, at *2 (D.N.D. May 20, 2021) (citation omitted). It "is rather an independent and original action." *Lomas Mortg.*, 1991 WL 12351, at *3; *see also Rosario v. Am. Export-Isbrandsten Lines, Inc.*, 531 F.2d 1227, 1233 (3rd Cir. 1976) ("Appellee's complaint against the United States was not a third-party complaint but rather a direct, in effect original, complaint by the plaintiff against the third-party defendant.").

The same holds true for a "third-party petition" under Missouri law. As Plaintiff acknowledges, "Rule 52.11 permits joinder of a person 'who is or may be liable to the defending party for all or part of the plaintiff's claims against the defending party.'" (ECF 11 at 5.2 (quoting Mo. R. Civ. P. 52.11).) It is thus incorrect as a matter of Missouri law to label a pleading "third-party petition" when the "third party plaintiff could proceed and recover against the third party defendant even if the third party plaintiff were to win in the suit brought by the plaintiff." *AAA Excavating, Inc. v. Francis Const., Inc.*, 678 S.W.2d 889, 894 (Mo. App. E.D. 1984).

Accordingly, under federal and state law, "a third-party complaint [cannot] be based on a defendant's independent, free-standing cause of action." *Red River Biorefinery, LLC v. NAES Corp.*, 2021 WL 6805705, at *2 (citation omitted). And a putative third-party complaint that states an independent, free-standing cause of action *instead of* a derivative claim is not a third-party

complaint at all. *See Lomas Mortg.*, 1991 WL 12351, at *3; *see also Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1139 n.7 (8th Cir. 1976) (treating a pleading "denominated a third-party complaint" as a cross-claim because the "claim could not be maintained as a third-party claim since it is not one for indemnity"). That pleading instead constitutes a "new and separate 'civil action' within the meaning of §§ 1441 and 1446." *Growth*, 2011 WL 6141097, at *7. Because a third-party defendant is *by definition* someone who has been served with a third-party complaint, serving a complaint that fails to meet the definition of a third-party complaint cannot transform the defendant to that complaint into a third-party defendant.

For example, consider Plaintiff's Complaint. Despite its improper "Third-Party Petition" label, Plaintiff does not allege that LOTS is liable to Plaintiff for any of his potential liability to Mariner, which consists solely in amounts owed to Mariner for a loan that Mariner made to him. (*See generally* ECF 1-1 at 6–7, 59–65.) He alleges instead that he and the putative class have entered unspecified "Contracts of Insurance" with LOTS. (*Id.* at 64.) Plaintiff defines "Contracts of Insurance" to *include* various forms of credit insurance issued through Mariner. (*Id.* at 59–60.) But as explained above, "Contracts of Insurance" is defined to also cover virtually *any* insurance contract whatsoever, and any Contract of Insurance between LOTS and an insured that terminates early falls within the class definition. *See Thornburg*, 2018 WL 3596048, at *4. Then, without any allegation whatsoever of the risk insured by any of these Contracts of Insurance—including Plaintiff's—Plaintiff alleges that LOTS is liable for breaching them because it failed to fully credit or refund unearned premiums attributed to them when they terminated early. (ECF 1-1 at 65.) Accordingly, Plaintiff's Complaint contains no specific allegation that the "Contract of Insurance" LOTS purportedly breached had anything to do with his debt with Mariner.

This point is corroborated by Mariner's Complaint, (*id.* at 6–7), and Plaintiff's Counterclaim. (*Id.* at 47–52.) In Mariner's Complaint, Mariner sued Plaintiff for breach of a "Note, Security Agreement & Arbitration Agreement" between Mariner and Plaintiff. (*Id.* at 6.) Then, Plaintiff filed his Counterclaim alleging that Mariner—not Plaintiff—had entered unspecified "Contracts of Insurance" with "[LOTS] or another insurer that writes Contracts of Insurance," (*id.*

at 2), under which Mariner allegedly "agreed, for the benefit of [Plaintiff], to refund or credit [Plaintiff] with the unearned premiums." (*Id.* at 51.) That is, unlike Plaintiff's Complaint, where he alleges that *he and LOTS* were parties to a Contract of Insurance and therefore that he has standing to enforce the contract directly, Plaintiff's Counterclaim alleges that *Mariner and LOTS* (or another insurer) were parties to a Contract of Insurance, which Plaintiff seeks to enforce as a third-party beneficiary. (*Id.* at 51, 64). Moreover, according to Plaintiff, this latter Contract of Insurance was allegedly breached by Mariner—*not by LOTS*—when Mariner failed to credit or refund unearned premiums to Plaintiff *in the course of calculating the amount Mariner seeks from Plaintiff in Mariner's Complaint*. (*Id.* at 50. ("[Mariner] sent written demands for payment to [Plaintiff] that were artificially and falsely inflated because the amount demanded included no credit or refund for the unearned premiums on [Mariner's] Insurance Contracts.")).

Plaintiff's Counterclaim and Complaint thus allege two distinct liabilities under two distinct contracts—(1) unearned premiums of $87.52 owed by *Mariner* under a Contract of Insurance between *Mariner and LOTS or another insurer* pertaining to *the loan between Mariner and Plaintiff* at issue in Mariner's Complaint, and (2) unspecified unearned premiums allegedly owed by *LOTS* under a Contract of Insurance between *Plaintiff and LOTS* pertaining to *an unspecified risk* insured by the Contract of Insurance. As such, there is nothing derivative about Plaintiff's claims against LOTS. To the contrary, taking Plaintiff's pleadings at face value, Plaintiff could obtain a defense verdict against Mariner, prevail on his third-party-breach-of-contract counterclaim against Mariner, and *still* pursue his breach-of-contract claim against LOTS. *Cf. AAA Excavating*, 678 S.W.2d at 894 (The "third party plaintiff could proceed and recover against the third party defendant even if the third party plaintiff were to win in the suit brought by the plaintiff."). Plaintiff's "Third-Party Petition," therefore, is no such thing, but is rather "a separate and independent civil action in third-party clothing." (ECF 1 at 8.)

For similar reasons, Plaintiff is mistaken to suggest that LOTS is a third-party counterclaim defendant. (*See* ECF 11 at 6 n.1.) The Supreme Court has defined "third-party counterclaim defendant" as "a party first brought into the case as an additional defendant to a counterclaim

asserted against the original plaintiff." *Home Depot*, 139 S. Ct. at 1747 n.1. Similarly, as Plaintiff notes, "Missouri Rule 52.05 provides, '[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.'" (ECF 11 at 6 n.1.) But LOTS has not been named a party to the Counterclaim or joined to the action between Mariner and LOTS because of it. As illustrated above, Plaintiff alleges neither that LOTS is an additional defendant to Plaintiff's counterclaim against Mariner, nor that LOTS is jointly, severally, or alternatively liable for that counterclaim. To the contrary, Plaintiff filed a separate Complaint in which he alleged only that LOTS had breached another Contract of Insurance altogether—there are no allegations in any pleading whatsoever that LOTS breached or is liable for amounts under the Contract of Insurance pertaining to his debt to Mariner, or that LOTS is otherwise liable for that any portion of that debt, including the amounts Mariner allegedly failed to credit or refund.

Thus, the sole difference between Plaintiff's Complaint and any other complaint is its "Third-Party Petition" label—a label this Court can and should ignore. *Lazarus*, 2021 WL 765708, at *7. Like any other complaint, Plaintiff's Complaint constitutes a "new and separate 'civil action' within the meaning of §§ 1441 and 1446." *Growth* 2011 WL 6141097, at *7; *cf. Stoll*, 185 F.2d at 98 (quoting *Weston*, 27 U.S. at 454) ("The term 'civil action' was used in Sec. 1441 as a substitute for 'suit of a civil matter,'" and a "suit" is "any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice which the law affords them."). Accordingly, LOTS is "the 'original defendant' to the 'civil action'" and, as such, "can remove [the] case to federal court." *Championship Prop. LLC v. Coan*, No. 20-13728, 2022 WL 4455208, at *4.

### B.   Plaintiff's cited authority does not help him.

Plaintiff is wrong to argue that "LOTS's argument has been repeatedly rejected by courts based on *Home Depot*." (ECF 11 at 4.) To start, Plaintiff gets no help from *Coan*, 2022 WL 4455208, or *G.S. v. CH Allied Services, Inc.*, No. 2:23-cv-04155-MDH, 2023 WL 6845828 (W.D. Mo. Oct. 17, 2023). In *Coan*, "Championship Property sued Coan, and Coan (in turn) asserted

what looks like various third-party claims and third-party counterclaims against Bank of America and Carrington Mortgage." 2022 WL 4455208, at *5. Those defendants, therefore, were properly brought into the action as third-party defendants insofar as they had been served with complaints asserting derivative claims against them. *Id.*; Fed. R. Civ. P. 14. Likewise in *G.S.*, the Court stated that "it is undisputed that BD is a third-party defendant who removed the present matter to his court under § 1441(a)" where the sole defect in the substantively proper third-party petition was its timeliness. *See* Third-Party Defendant's Opposition to Third-Party Plaintiff's Remand Motion, *G.S. v. CH Allied Services, Inc.*, No. 2:23-cv-04155-MDH (W.D. Mo. Sept. 25, 2023) ("Further, Boone Hospital seeks contribution from BD[.]") (attached hereto as Exhibit B). In both cases, unlike this one, the removing party met the definition of "third-party defendant."

Also inapposite is *Jefferson Capital Systems, LLC v. Alveranga*, No. 1:20-CV-990, 2020 WL 6685304 (N.D. Ohio Nov. 12, 2020). There, the court said that *Home Depot* precluded removal because "Exeter was brought into the state court action for the first time by the filing of the Alverangas' Counterclaim, which purported to join Exeter as either a third-party defendant or third-party counterclaim defendant." *Id.* That is, the pleading was not a complaint constituting a separate civil action, but a counterclaim to which the defendants alleged they were improperly joined. *Id.* This procedural point makes all the difference here because Plaintiff has not only failed to properly join LOTS to a counterclaim; Plaintiff has not even attempted to do so, instead filing a separate pleading altogether that, by definition, cannot be anything but a complaint commencing a new civil action. Unlike LOTS, the removing party in *Alveranga* did not contest whether the counterclaim in Plaintiff's first alleged claims against him was in fact a counterclaim; he presumed that fact and argued only that he was improperly joined to it. *Id.*

To read *Alveranga* otherwise would flatly contradict *Growth* and other cases acknowledging that, because whether a party is an original defendant is a question of federal law, courts must consider the nature of the action to be removed, not the labels parties use in the pleadings. *See Growth*, 2011 WL 6141097, at *7–8; *Lazarus*, 2021 WL 765708, at *7; *Hill*, 944 F. Supp. at 698 n.4. Indeed, the courts in some of the cases Plaintiff cites appear to have made just

this error. *See CIT Bank, N.A. v. Jade McGaff, M.D., LLC*, 2021 WL 932009, at *2 (D. Haw. Mar. 11, 2021); *Prokos v. Hines*, 2008 WL 11452317, at *3 (S.D. Ohio, Feb. 28, 2008). But this Court is not bound by, and should not adopt, erroneous reasoning from courts in other Circuits, especially when that reasoning rests on a presumption against removal that does not apply to CAFA cases like this one. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."); *cf., e.g., G.S.*, 2023 WL 6745828, at *1; *CIT Bank*, 2021 WL 932009, at *1; *Prokos*, 2008 WL 11452317, at *3. It would be doubly erroneous to adopt their approach when a court in this Circuit has approved removal in a situation virtually identical to this one in a manner consistent with *Home Depot*. *See Growth*, 2011 WL 6141097, at *7–8. The Western District of Missouri's decision in *Growth* is so on point that Plaintiff, revealingly, ignores it. (ECF 11.) But *Growth* is correct, and this Court should follow it.

Moreover, even if LOTS were a third-party defendant, these cases would have no bearing because none of them is binding on this Court. And they are not persuasive to the extent they state that *Home Depot* precludes removal by third-party defendants because *Home Depot* in fact supports third-party removal. First, *Home Depot* decided only whether a third-party counterclaim defendant is a "defendant" under §§ 1441(a) and § 1453(b). 139 S. Ct. at 1745. But a third-party defendant is not a third-party counterclaim defendant. *Coan*, 2022 WL 4455208, at *4. And second, a counterclaim is indisputably a *claim* brought in a pleading *within* an ongoing civil action—it is not a new *action* brought in a separate *complaint*. Fed. R. Civ. P. 7, 13. A third-party complaint, by contrast, is a complaint. *See Home Depot*, 139 S. Ct. at 1755 (Alito, J., dissenting) ("Adjectives like 'third-party' 'modify nouns—they pick out a subset of a category that possesses a certain quality.'"). As such, when filed, it constitutes a distinct "civil action" within the meaning of § 1441, albeit one tried concurrently with another related action. *See* Fed. R. Civ. P. 3, 14; *see also Stoll*, 185 F.2d at 98. Thus, under *Home Depot*, a third-party defendant can remove the civil action commenced by a third-party complaint.

Alternatively, should this Court find that *Home Depot* supports remand here, *Home Depot*

14

is wrongly decided because third-party defendants, including third-party counterclaim defendants, are plainly "the defendant or the defendants" under § 1441(a). *See Home Depot*, 139 S. Ct. at 1760–65 (Alito, J., dissenting). Moreover, it is wrongly decided as contrary to § 1453(b), which permits removal by "any defendant" to a "class action" without qualification. *See Home Depot*, 139 S. Ct. at 1756 (Alito, J., dissenting) ("[U]nless third-party [counterclaim] defendants like Home Depot differ in some way that is relevant to removal (as a matter of text, precedent, or common sense), they fall within CAFA's coverage of 'any defendant.'"). Given these contradictions with the ordinary meaning of the removal statutes and the narrow 5-4 margin of the decision—a majority that includes two Justices no longer on the Supreme Court—the Supreme Court is unlikely to follow *Home Depot* today. Although this Court cannot overrule *Home Depot* directly, this Court should decline to extend it to putative third-party defendants like LOTS that are not third-party counterclaim defendants and, therefore, fall outside the strict purview of the decision. *See id.* at 1745 ("In this case, we address whether either [§§ 1441(a) or 1453(b)] allows a third-party counterclaim defendant—that is, a party brought into a lawsuit through a counterclaim filed by the original defendant—to remove the counterclaim filed against it.").

## CONCLUSION

LOTS has shown that this Court has jurisdiction and that LOTS is a defendant that can remove. Plaintiff's attempt to show otherwise is without merit. Accordingly, this Court should deny Plaintiff's Motion to Remand.

Dated: January 12, 2024                              Respectfully submitted,

**GM LAW PC**

*/s/ David B. Helms*
David B. Helms #48941 (MO)
8000 Maryland Avenue, Suite 1060
St. Louis, MO 63105
(314) 474-1750
(816) 471-2221
davidh@gmlawpc.com
**Attorney for Life of the South Insurance Company**

15

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on January 12, 2024, a copy of the foregoing was filed with the Court using the Court's CM/ECF system, which sent notification of such filing to all counsel and parties of record.


                    */s/ David B. Helms*     
                    David B. Helms